UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__1/12/2021__
```

-------------------------------------------------------------------X
:
JACOB CHACHKES,                                                     :
:
Plaintiff,                       :
:
:                         20-cv-2879 (LJL)
-v-                                       :
:                         OPINION AND ORDER
JOHN V. DAVID, et al,                                              :
:
Defendants.                      :
:
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants, John V. David ("John David") and Jason V. David ("Jason David")

(together, "Defendants"), move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss claims 2, 3, 6,

and 8 of the complaint, Dkt. No. 1 ("Compl." or "Complaint"), filed against them by Plaintiff

Jacob Chachkes ("Plaintiff" or "Chachkes"). *See* Dkt. Nos. 26, 27. Chachkes cross-moves for

summary judgment. *See* Dkt. Nos. 30-32.

## BACKGROUND

This case involves a dispute between the income beneficiary of an irrevocable trust (the

"Jane David Trust" or "Trust"), which was established by that beneficiary's now-deceased but

long-term partner, and the son and grandson of that partner. Chachkes is the income beneficiary

and long-term partner. The defendants are the son and grandson. The long-term partner, Jane

David, passed away in May 2016 but had established the Jane David Trust to benefit Chachkes

during his lifetime and her son and grandson after his death. John David is the son of Jane David

from a prior marriage. Jason David is John David's son, Jane David's grandson. The facts

elaborated herein are taken from the Complaint and documents attached thereto and are accepted

as true for purposes of evaluating Defendant's partial motion to dismiss only. Plaintiff's motion

for partial summary judgment presents a pure question of law concerning the interpretation of the Jane V. David Irrevocable Trust Agreement, Compl. Ex. A ("Trust Agreement"). The following facts, other than those characterizing the Trust Agreement, are not necessary to the Court's holding with respect to that question.

On August 9, 2001, Jane David, as grantor, established the Jane David Trust, the terms of which are set forth in the Trust Agreement. The Trust Agreement was executed on August 9, 2001 by and between Jane David, on the one hand, and Plaintiff and John David, named as trustees ("Trustees"), on the other. Pursuant to the Trust Agreement, Jane David irrevocably transferred to the Trustees certain assets to be held and administered in accordance with the terms, provisions and conditions of the Trust Agreement. The Trust was also partially funded by assets of Plaintiff. Compl. ¶ 15.

The Trust Agreement designated Plaintiff as the income beneficiary entitled to be paid the entire net income received by the Trust (after payment of all administrative obligations or premiums on life insurance policies, if any) until Plaintiff's death. The Trustees were required to pay "the entire net income received by the Trustees" to Plaintiff "in monthly or other convenient installments." Trust Agreement, Article II(A). Upon Plaintiff's death, if Jane David was still living, she would be entitled to the income from the Trust. *Id*.

In addition to income, the Trust Agreement provided, with respect to principal, as follows:

> [T]he Trustees, with the exception of [Plaintiff], are authorized to pay to, or for the benefit of the income beneficiary, such portions of the principal of this Trust, whether the whole or a lessor amount, as the Trustees shall, from time to time, determine to be necessary in their absolute and uncontrolled discretion for their health, education, maintenance and support, in accordance with his station in life, due regard being given by the Trustees to the amount of income available to him from the Trust, and from sources other than this Trust. It is the Grantor's intention that the health, maintenance and support of the income beneficiary shall be of primary concern, and the Trustees shall exercise their discretion in using principal for the income beneficiary in a reasonable manner consistent with maintaining the accustomed manner of living of the income beneficiary, considering all other beneficiaries of the Trust to be secondary and without liability to any other beneficiary for the use of principal for the income beneficiary.

Trust Agreement, Article II(B).

Under the Trust Agreement, John David is designated as remainder beneficiary of the Jane David Trust, entitled to distribution of the trust assets upon the death of Plaintiff and Jane David if John David were then living. *See* Compl. ¶ 23. John David's children, including Jason David, were designated as successor remainder beneficiaries, entitled to distribution of the assets of the Trust, in trust, if John David were not living. *See id.*

Under the heading "Removal and Resignation of a Trustee," the Trust Agreement provided as follows:

> JACOB CHACHKES, during his lifetime, at his discretion, may remove or cause the removal of a Trustee or any successor Trustee, as Trustee under the trust. Upon such removal or in the event of the resignation of a Trustee or any successor trustee, the [sic] JACOB CHACHKES shall designate, at his own discretion, another Trustee to serve as successor trustee hereunder.

Trust Agreement, Article VIII(E).

The Trust Agreement thereby provided that after Plaintiff's death, John David would have the right to remove or cause the removal of a Trustee, or any successor Trustee, as Trustee under the Jane David Trust.

At around the same time the Trust Agreement was executed, Plaintiff established a second irrevocable trust, the Jacob Chachkes Irrevocable Trust (together with the Jane David

3

Trust, the "Trusts"), funded with a combination of Plaintiff's and Jane David's assets. *See* Compl. ¶ 14. Prior to 2019, Plaintiff generally took distributions of both income and principal from the Jane David Trust as needed to pay his—and, before her death, Jane David's—expenses, including rent, utilities and taxes, and one-time expenses such as trips and gifts to John David and Jason David. *Id.* ¶ 26. Distributions from the Jane David Trust were Plaintiff's primary source of income. *Id.* ¶ 25.

Jane David died in May 2016. *Id.* ¶ 28.

In or about 2018, Jason David asked Plaintiff to agree to a loan of approximately $4 million from the Trusts—virtually all of the combined assets of the two Trusts—to invest in a business venture, and Plaintiff refused the request. *Id.* ¶ 29.

In April 2019, Plaintiff married his current wife, Helene Fischer.

Whereas previously John David did not object to any of the distributions of income to Plaintiff, following—and, Plaintiff avers, in apparent response to—these two events, John David began objecting to and limiting Plaintiff's distributions from the Jane David Trust principal as may be appropriate pursuant to Article II(B) of the Trust Agreement. *Id.* ¶ 31. John David also allegedly failed to cause the Jane David Trust to make regular monthly distributions of income to Plaintiff, placing Plaintiff in an untenable financial situation. *Id.* ¶ 32. Plaintiff alleges that John David was unhappy that he did not receive an inheritance from Jane David, that he was spiteful about the refused loan, and that he was intending to preserve the Jane David Trust's assets for himself and his children. *Id.* ¶¶ 31, 33.

In July 2019, Plaintiff and his wife executed, with John David, Jason David, and two other successor remainder beneficiaries, the "Agreement of the Jane V. David Irrevocable Trust Agreement, dated August 9, 2001" ("2019 Agreement"). Compl. Ex B. The 2019 Agreement

reflected the agreement of the parties "to make certain withdrawals from principal of the [Jane

David] Trust . . . and to continue the [Jane David] Trust for the benefit of [Plaintiff], as the

Income Beneficiary." 2019 Agreement at 2.  It then provided for the distribution of income and

principal from the Jane David Trust as follows:  Plaintiff was to continue to receive the accrued

income to date of the Trust plus a one-time payment from principal of $317,843.40, John David

was to receive a one-time payment of $500,211.27 from principal and Jason David was to

receive a one-time payment of $235,000 from principal.  In addition, and as partial consideration

for such payments, Plaintiff agreed to conditionally resign as a Trustee of the Trust on a number

of conditions.  Included among those conditions were that there would be a monthly payment of

the greater of actual income or $9,500.00 first from income and then from principal of the Jane

David Trust.  The 2019 Agreement recited that the discretion of the remaining Trustee with

respect to the distribution of income or principal was conclusive and would not be subject to

judicial review:

> 2. Conclusive Discretion of Trustee.  In accordance with the terms of Article II of
> the Trust Agreement, the Trustee may exercise the discretionary powers conferred
> in a manner, which will provide flexibility in the administration of the Trusts under
> conditions from time to time existing and in exercising these powers, the discretion
> of the Trustee shall be conclusive as to the advisability of any distribution of income
> or principal, and as to the person to or for whom such distribution is to be made,
> and same shall not be subject to judicial review.

2019 Agreement, Article III(B)(2).

It also stated that the 2019 Agreement was prepared at the request of Plaintiff and

contained the acknowledgement of each party to the agreement that such party had had the

opportunity, before signing the Agreement, to seek separate independent legal counsel and tax

advice.[1]  *Id.* § 4(B).

---

[1] Plaintiff alleges that, in fact, he was not represented by independent counsel in connection with
the drafting or execution of the 2019 agreement and that it was principally prepared by Jason

Plaintiff alleges that he was coerced into signing the 2019 Agreement.  Compl. ¶ 34.  At the time he entered into the agreement, Plaintiff wanted to buy a vacation home for himself and his wife and had requested a distribution of principal from the Jane David Trust to allow him to do so.  *Id*. ¶35.  John David allegedly refused to authorize the distribution unless Plaintiff would agree to sign the 2019 Agreement.  *Id*.  In addition, John David allegedly refused to fulfill his obligations as Trustee by failing to make income distributions to Plaintiff.  *Id*. ¶ 36.  He thus claims that since the Jane David Trust was his primary means of financial support and since John David had made clear he would not make income and principal distributions from the Jane David Trust unless Plaintiff signed the 2019 Agreement, he had "no choice but to agree to John David's terms."  *Id*. ¶ 36.  As a result, Plaintiff received funds from the Jane David Trust including the one-time principal payment of $317,843.40 that permitted him to purchase the vacation home for himself and his wife.  *Id*. ¶ 40.  In addition, however, John David and Jason David received over $700,000 in principal payments, distributions that Plaintiff characterizes as "massive and improper."  *Id*. ¶¶ 34, 35.

Upon Plaintiff's resignation as Trustee, Jason David was appointed successor Trustee. *Id*. ¶ 43.

Plaintiff alleges that since the execution of the 2019 Agreement, John David and Jason David have continued to resist and refuse Plaintiff's requests for distributions.  John David and Jason David refused Plaintiff's request for $5,500 to pay for new hearing aids for Plaintiff.  *Id*. ¶ 45.  They also refused Plaintiff's request for $15,000 to replace the air conditioning system in his Florida home.  *Id*.  Plaintiff alleges that as a result of the "unreasonable and inappropriate restrictions placed on Plaintiff's distributions from the Jane David Trust, Plaintiff has been

David.

forced to forego expenses and purchases that are appropriate to his station in life and his accustomed manner of living, including the purchase of an engagement ring for his wife or a honeymoon." *Id.* ¶ 46.  John David and Jason David have also asked Plaintiff to provide an accounting of his uses of his monthly income distribution.  *Id.* ¶ 47.

In October 2019, as a result of this conduct by John David and Jason David, Plaintiff served a written notice of removal on John David and Jason David seeking to have them removed as Trustees.  *Id.* ¶ 48; Dkt. No. 31-2.  The notice also demanded that John David and Jason David deliver bank and other records of the Trust to Plaintiff.  *See* Dkt. No. 31-2.  Plaintiff also notified UBS Financial Services, Inc. ("UBS") the financial institution that serves as the depository of the Trustee's assets of the removal.  Compl. ¶ 48.  John David and Jason David refused to transfer the assets of the Jane David Trust to the designated successor Trustee, as would be required if the removal were valid, and informed UBS that they were disputing the removal.  *Id.* ¶¶ 49-50.  As a result, UBS informed Plaintiff that it would freeze the Jane David Trust's accounts pending resolution of the dispute.  *Id.* ¶ 50.  Plaintiff has since withdrawn the notice of removal, Dkt No. 31 ¶ 8, but pleads that he intends to deliver a second notice of removal of John David and Jason David as Trustees to Defendants.  Compl. ¶ 54.

Based on these allegations, Plaintiff asserts claims against John David and Jason David for breach of fiduciary duty, breach of the Trust Agreement, Rescission, Unjust Enrichment, Money Had and Received, and Accounting.  He also asserts a claim for a declaratory judgment that the 2019 Agreement is invalid because executed under economic duress and without the advice of counsel and without consideration, and that he has a right to remove John David and Jason David as Trustees and to designate successor Trustees.  He also asserts a separate claim for preliminary and permanent injunctive relief.

## PROCEDURAL HISTORY

Plaintiff filed his complaint on April 7, 2020 against John David and Jason David and UBS. Dkt No. 1. UBS answered on April 27, 2020. Dkt. No. 14. On May 27, 2020, John David and Jason David filed their motion for partial dismissal of the claims against them. Dkt. No. 26. Plaintiff responded to that motion by memorandum of law filed on June 24, 2020, Dkt. No. 34, and Defendants replied by memorandum of law filed on July 17, 2020, Dkt. No. 37. On June 24, 2020, Plaintiff filed a motion for partial summary judgment. Dkt. No. 30. Defendants responded to that motion by memorandum of law filed on July 17, 2020, Dkt. No. 40, and Plaintiff replied on July 24, 2020, Dkt. No. 41. The Court heard oral argument on the pending motions on December 10, 2020.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Id*. at 114 (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 323). In deciding a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor." *Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

### A.      Plaintiff's motion for partial summary judgment

Plaintiff seeks summary judgment on the issue of his entitlement to a declaration that he has the right to remove John David and Jason David as Trustees of the Jane David Trust pursuant to section VIII(E) of the Trust Agreement.  Defendants oppose that motion on procedural and substantive grounds.  First, Defendants argue that the motion is premature and unripe for adjudication, as Defendants have not filed a responsive pleading and discovery has not yet commenced.  *See* Dkt. No. 40 at 5-7.  Second Defendants argue the Trust Agreement gave Plaintiff the power to remove a Trustee only when he himself was a Trustee, and that Plaintiff lost that power when he resigned as a Trustee pursuant to the 2019 Agreement.  *See* Dkt. No. 40 at 7-10.  Both of these arguments fail, and Plaintiff is entitled to summary judgment on the issue presented.

### 1.     The motion for summary judgment is not premature

Defendants argue initially that Plaintiff's motion is procedurally premature both because they have not filed an answer or responsive pleading and on the theory that summary judgment is improper on a claim for declaratory judgment before discovery has commenced.

Defendants' argument is inconsistent with the language of Federal Rule of Civil Procedure 56 and overreads the cases upon which it relies.

Under Rule 56(b), "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of discovery." Fed. R. Civ. P. 56(b). The rule protects against premature motions for summary judgment both by requiring the party asserting that a fact is not genuinely disputed to "cit[e] to particular parts of materials in the record" supporting that proposition, Fed. R. Civ. P. 56(c)(1), and by permitting the non-movant—if unable to either show that the materials cited do not establish the purported fact or to point to contrary facts demonstrating a genuine issue—to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

Neither circumstance is present here to forestall the Court from considering Plaintiff's motion for summary judgment. The parties agree that the Trust Agreement attached as Exhibit A to the complaint, at Dkt. No. 1-1, and as Exhibit A to the Chachkes Declaration, at Dkt No. 31-1, is authentic and is the operative Trust Agreement. *See* Dkt Nos. 33, 39. The interpretation of the language of that agreement presents a pure question of law. And Defendants have not filed an affidavit or declaration showing that they cannot present facts essential to justify their opposition.

The cases cited by Defendants thus do not support the broad proposition that summary judgment is never appropriate before an answer or responsive pleading or that defendants can

delay a summary judgment motion by filing a partial motion to dismiss.  In *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp. 3d 173 (S.D.N.Y. 2014), for example, a court in this district declined to adjudicate a motion for summary judgment before an answer had been filed on the grounds that the claims at issue were "factually and legally intertwined with the existence, nature, and extent of [an] oral contract" and the "understanding among [the parties]," *see id.* at 189.  Such is not the case here, where the motion for summary judgment depends entirely upon construction of a single contract that, as elaborated below, is unambiguous as to the question at issue.  Indeed, each of the cases Defendants cite involved either factual disputes or other complications not present here, *See id.*; *Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Telos CLO 1006-1 Ltd.*, 274 F. Supp. 3d 191, 215 (S.D.N.Y. 2017) ("The granting of the Telos motion for summary judgment would unnecessarily complicate the procedural posture of this dispute . . . [and] [n]o damage to [the Movant's] ultimate position by the denial of the . . . [motion] has been established."); or else an unelaborated exercise of judicial discretion that diverges from the Court's instant judgment, *see Toussie v. Allstate Ins. Co.*, 213 F. Supp. 3d 444, 446 (E.D.N.Y. 2016) (declining to decide a motion for summary judgment because it would be "manifestly unjust and a waste of judicial resources if all relevant claims could not be adjudicated in this litigation because plaintiff had sought summary judgment prior to answer."); *Cusamano v. Alexander*, 691 F. Supp. 2d 312, 321 (N.D.N.Y. 2009) (stating without elaboration, "[p]laintiff's cross-motion for summary judgment is premature because defendants have yet to file an answer to the amended complaint.").

The cases cited by Defendant also do not support the further broad proposition that summary judgment is never available when a party is seeking declaratory relief prior to discovery.  *See ACIM NY, L.L.C. v. Nissan N. Am., Inc.*, 2019 WL 935424, at *9 (S.D.N.Y. Feb.

26, 2019) (denying summary judgment as premature before the close of discovery where the court determined that further discovery might elucidate issues of fact including "whether [third-party plaintiff] caused [third-party defendant's] alleged contractual breaches and whether Boyko signed the documents purporting to contain his signature.").

Although granting summary judgment before the parties have engaged in discovery may be disfavored, *see, e.g.*, *Walden v. Sanitation Salvage Corp.*, 2015 WL 1433353, at *5 (S.D.N.Y. Mar. 30, 2015) ("Courts in the Second Circuit routinely deny or defer motions for summary judgment when the non-movant has not had an opportunity to conduct discovery and submits an affidavit or declaration that meets the requirements set forth in Rule 56(d)."), where, as here "the issue to be decided is limited to a pure question of law, such as the interpretation of unambiguous contract language, summary judgment may be appropriate," *MCC Non Ferrous Trading Inc. v. AGCS Marine Ins. Co.*, 2015 WL 3651537, at *3 (S.D.N.Y. June 8, 2015) (collecting cases); *see also XL Specialty Ins. Co. v. Agoglia*, 2009 WL 1227485, at *6 (S.D.N.Y. Apr. 30, 2009) ("[W]here it is clear that the nonmoving party cannot defeat the motion by showing facts sufficient to require a trial for resolution, summary judgment may be granted notwithstanding the absence of discovery.") (citing *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 519 (2d Cir.1996)), *reconsideration granted on other grounds sub nom. Murphy v. Allied World Assurance Co.*, 2009 WL 1528527 (S.D.N.Y. May 29, 2009). This is such a case. Moreover, the issue involves a request for declaratory relief based upon what Plaintiff alleges is an impairment of the exercise of his contractual rights. Thus, not only is the motion formally ripe for adjudication, but the interest of justice weights in favor of resolving it without delay. *See* Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court

and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

### 2.   The undisputed facts entitle Plaintiff to summary judgment on his power to remove the Trustees

The Trust Agreement provides in Article VIII(E)(1):

> JACOB CHACHKES, during his lifetime, at his discretion, may remove or cause the removal of a Trustee or any successor Trustee, as Trustee under the trust.  Upon such removal or in the event of the resignation of a Trustee or any successor trustee, the [sic] JACOB CHACHKES shall designate, at his own discretion, another Trustee to serve as successor trustee hereunder.

Trust Agreement, Article VIII(E)—(hereinafter "Article VIII(E)")—(1).

The parties disagree on the meaning of this language and whether it gives Plaintiff, after he ceases to be a Trustee, the power to remove other Trustees.  Plaintiff contends that this provision entitles Chachkes to remove a Trustee anytime during his lifetime, irrespective of whether Chachkes is himself a Trustee when he takes such action.  According to Plaintiff, the language "as Trustee under the trust" at the end of the first sentence quoted above refers to the position from which the Trustee or successor Trustee will be removed.  Defendants contend that the clause "as a Trustee under the trust" unambiguously refers to Chachkes, and establishes that Chachkes has the power to remove a Trustee only so long as he himself is a Trustee.  According to Defendants, once Plaintiff relinquished his position as Trustee pursuant to the 2019 Agreement, he also relinquished his power to remove a Trustee under the Trust Agreement.  Defendants also argue that if the language does not clearly limit the time period during which Plaintiff can remove a Trustee to when he is himself a Trustee, it is at least ambiguous and that Plaintiff accordingly cannot be granted summary judgment.  The plain language of the Trust Agreement, read in the context of the Trust Agreement as a whole, unambiguously supports Plaintiff's position.  Plaintiff is therefore entitled to summary judgment on this issue.

Under the "rule of last antecedent," a "limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *see also FTV v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 & n.4 (1959) (the "limiting clause is to be applied only to the last antecedent"); *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 213-15 (2d Cir. 1999); *Elliot Coal Mining Co. v. Dir., Off. of Workers' Comp. Programs*, 17 F.3d 616, 630 (3d Cir. 1994). That principle, applied here, supports Plaintiff's interpretation of Article VIII(E)(1). The modifying phrase "as Trustee under the Trust," modifies both nouns in the immediately preceding clause that includes "a Trustee" and "any successor Trustee." Thus, under Section E(1), Plaintiff can remove a "Trustee or a successor Trustee" only from their capacity as a "Trustee under the Trust," and cannot remove a Trustee or successor Trustee from any other status he has under the Trust Agreement. As Plaintiff argues, that language is necessary because the individual designated as Trustee under the Trust Agreement also had another capacity under the Trust Agreement. He was the remainder beneficiary. The clause "as Trustee under the trust" serves to clarify that Plaintiff is authorized under Section E(1) to remove John David only from his position as Trustee, not from his station as remainder beneficiary or in any other capacity.[2]

Plaintiff's interpretation also accords meaning to all of the words in Article VIII(E)(1), consistent with the principle that the court must, where possible, avoid an interpretation that renders language surplusage. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (under New York law, a contract "should be construed so as to give full meaning and effect to all of its provisions," and "[a]n interpretation of a contract that has the

---

[2] The Trust Agreement is understood to contemplate the possibility that upon the death or resignation of John David, prior to the death of Plaintiff, John David's children—who are also beneficiaries—would be eligible for appointment as a successor trustee.

effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.") (internal quotation marks and citations omitted); *Aviva Trucking Special Lines v. Ashe*, 400 F. Supp.3d 76, 81 (S.D.N.Y. 2019) (courts should avoid interpretations that would render contract language "meaningless surplusage"). Article VIII(E)(1) begins with the language that Plaintiff has the discretion to remove or cause the removal of a trustee or successor trustee "during his lifetime." That language would be superfluous, however, under Defendants' interpretation. Under Defendants' interpretation, Plaintiff would only have removal authority during the time he was serving as Trustee under the trust—a period, by definition, during which he was alive. There would have been no reason for the drafters to include the language "during his lifetime."

Defendants' interpretation is also consistent with Article VIII(E) as a whole. *See In re AMR Corp.*, 485 B.R. 279, 303 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d 88 (2d Cir. 2013) ("New York law provides that a court should construe a contract in a way that reasonably harmonizes its provisions and avoids inconsistencies.") (citing *James v. Jamie Towers Hous. Co.*, 743 N.Y.S.2d 85, 87 (1st Dep't 2002); *Barrow v. Lawrence United Corp.*, 538 N.Y.S.2d 363, 365 (3d Dept. 1989)). After providing in Section E(1) for the removal of a Trustee by Plaintiff at his discretion and during his lifetime, the next paragraph, Section E(2) elaborates what happens after the death of Plaintiff. It provides:

> After the death of JACOB CHACHKES, the son of the Grantor may remove or cause the removal of a Trustee, or any successor Trustee, as Trustee under the Trust. Upon such removal or in the event of the resignation of a Trustee or any successor trustee, the son of the Grantor shall designate another Trustee to serve as successor trustee hereunder.

Article VIII(E)(2).

Article VIII(E)(2) transfers the power to remove a Trustee from Chachkes to John David upon Chachkes' *death*, not upon Chachkes' resignation as Trustee. Thus, read together, Articles

E(1) and E(2) set out an order of authority to remove a Trustee based upon whether or not Plaintiff is still alive, and not by the capacity—as Trustee or otherwise—of the person authorized to exercise the removal power at the time such power is sought to be exercised.  Plaintiff has that power until his death and then, after his death, John David has the power.  Read otherwise, Article VIII(E)(2) would admit of gaps that could never have been intended by the parties.  Articles III(E)(1) and E(2) reflect an intention that there should be a seamless transfer of the power to remove a Trustee from Plaintiff to the son of the Grantor.  Under Defendant's interpretation, in the event that Plaintiff was still alive but no longer a "Trustee under the trust," neither Chachkes nor the son of the Grantor nor any other party would have the authority to remove or cause the removal of a Trustee.  Moreover, the same language, "as Trustee of the trust," appears in the same place in Article VIII(E)(2) as in Article VIII(E)(1).  Thus, if after Chachkes' death the son of the Grantor ceased to be a Trustee under the trust during his lifetime, he would be stripped of the power to remove a Trustee—again leaving no one with that power.

Finally, Plaintiff's interpretation is consistent with and gives effect to the broader intent of the Trust Agreement.  *See Barrow*, 538 N.Y.S.2d at 365 ("[S]pecific clauses of a contract are to be read consistently with the overall manifest purpose of the parties' agreement.").  As the provisions with respect to distributions of income and principal make clear, the Trust Agreement attempts to balance two potentially competing interests and intents: (1) that "the health, maintenance and support of [Plaintiff as] the income beneficiary . . . be of primary concern, and the Trustees . . . exercise their discretion in using principal for the income beneficiary in a reasonable manner consistent with maintaining the accustomed manner of living of the income beneficiary," Trust Agreement Article II(B); and (2) that John David be able to enjoy the balance of the trust assets after Jane David's and Chachkes' death and that any distributions of principal

16

to Chachkes be consistent with (and not greater than) his station in life and give "due regard . . . to the amount of income available to him from the Trust, and from sources other than this Trust," *Id*. The Trust Agreement balanced those competing interests by giving Plaintiff, and Plaintiff alone, the right to remove Trustees during his lifetime and by simultaneously denying him the right to authorize distributions from Trust principal to benefit himself.  In that way, Plaintiff is able to protect himself from a Trustee who dishonors the Grantor's intent by denying, wholesale, any distributions of principal without regard to Plaintiff's station in life and income available from other sources.  At the same time, John David—as remainder trustee—is protected against the dissipation of Trust principal by Plaintiff.  A trustee other than Plaintiff alone is given authority to distribute principal to Plaintiff and that trustee must honor not only the Grantor's intent that Plaintiff be maintained in his station in life but also the Trustee's fiduciary duties not to waste trustee assets and to preserve principal for the benefit of those who would come after Plaintiff.

Plaintiff's interpretation honors that intent.  By giving Plaintiff authority to remove a Trustee who Plaintiff believes to be dishonoring the Grantor's intent during Plaintiff's lifetime and not just during the term of his service as a Trustee, such interpretation gives Plaintiff authority consistent with the interest the authority is intended to protect—the interest that his co-Trustee not conserve all trust assets and principal for the co-Trustee's own benefit but at the expense of Plaintiff.  It also gives John David, as successor beneficiary, protection consistent with John David's interest—the ability to remove a trustee after Plaintiff's death when John David alone is the trust beneficiary.  By contrast, Defendants' interpretation dishonors that intent.  If adopted, it would leave Plaintiff entirely at the mercy of a Trustee who, Plaintiff argues, has no interest in distributing principal to him, and with no means to protect himself.

17

Defendants' arguments to the contrary are not persuasive.  Defendants argue that because "as Trustee under the trust" appears at the end of the provision and is set off from the remainder of the sentence, it must modify all of the language that precedes it including the capacity in which Plaintiff must exercise his right of removal.  However, as set forth above, the principle upon which Defendants rely—the last antecedent principal—dictates that a limiting clause or phrase should ordinarily be read as modifying only the "noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. at 26.  It is not a general principle of grammar that the language at the end of a sentence modifies everything that precedes it.  To the contrary, had the drafters intended the language "as Trustee under the trust," to circumscribe the time period during which Plaintiff could exercise the removal power, it would have been far more logical for them to have placed it at the beginning of the sentence next to the language "during his lifetime," which does describe when Plaintiff can exercise the removal power.

Next, Defendants argue that Plaintiff's interpretation is inconsistent with the structure and purpose of the Trust Agreement.  The Jane David Trust, Defendants say, was drafted "specifically to avoid Plaintiff, as the income beneficiary, from having the ability to remove all of the Trustees and appoint himself as the sole Trustee of the Jane David Trust."  Dkt. No. 40 at 12.  Were it otherwise, they claim, Plaintiff could "appoint himself as the sole Trustee of the Jane David Trust and also receive principal distributions as the income beneficiary."  *Id* at 12-13.  In making that argument, however, Defendants attack a strawman.  Plaintiff is not seeking in this application a declaration that he be permitted to appoint himself as a Trustee much less as the sole Trustee.  Nor is he seeking a declaration that he be permitted, as a sole Trustee, to make principal distributions to himself.  And, were he to do so, the very provision of the Trust Agreement Defendants point to in support of their interpretation is sufficient to give Defendants

the protection they need.  *See* Trust Agreement, Article II(B) ("the Trustees, *with the exception of Jacob Chachkes*, are authorized to pay to, or for the benefit of the income beneficiary, such portions of the principal of this Trust . . .") (emphasis added).  Plaintiff cannot authorize distributions to himself; were he to be the sole Trustee, no principal distributions whatsoever could be made to him.  The Trust Agreement need not be read to eliminate Plaintiff's removal power to satisfy the intent Defendants ascribe to it.

Finally, defendants argue that if the Court does not agree with their interpretation, then the contract is at least ambiguous, as evidenced by the parties' disparate interpretations of it.  *See* Dkt. No. 40 at 9.  But it is well-settled that contract language is not rendered ambiguous simply because the parties purport to disagree on its plain meaning.  *See Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003) ("Unambiguous contract language is not rendered ambiguous by competing interpretations of it urged in litigation.").  Where, as here, defendants' interpretation would "strain the contract language beyond its reasonable and ordinary meaning," the contract is not ambiguous.  *L. Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010).  Because the unambiguous language of the Trust Agreement authorizes Chachkes to remove a Trustee even after his own resignation as Trustee, Plaintiff is entitled to summary judgment on that issue.

### B.     Defendants' partial motion to dismiss

Defendants move to dismiss counts two, three, six, and eight of the Complaint, for breach of contract, rescission, equitable accounting, and preliminary and permanent injunction, respectively.  For the following reasons, Defendants' motion is granted, except as to count eight for a preliminary and permanent injunction.

### 1.     Breach of contract

In moving to dismiss the second cause of action, for breach of contract, Defendants argue that Plaintiff has failed to allege both that he performed his own obligations under the Trust Agreement and that Defendants breached the Trust Agreement.

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).  Plaintiff alleges that Defendants violated duties under the Trust Agreement, in their capacities as Trustees, to (a) pay Plaintiff all income from the trust monthly or in other convenient installments; (b) exercise their discretion to pay portions of the trust principal to Plaintiff as necessary for his health, education, maintenance and support, in accordance with his station in life; (c) exercise their discretion to distribute principal in a reasonable manner consistent with maintaining Plaintiff's accustomed manner of living, considering all other beneficiaries of the Jane David Trust to be secondary; and (d) upon receipt of a duly executed notice of removal, to transfer all of the trust's assets to the designated successor trustee. *See* Compl. ¶ 66.

Plaintiff has not met the pleading standard to state a claim for breach of contract because he has not adequately alleged facts that would make out the third element of such a claim—that Defendants breached the Trust Agreement.

The Complaint alleges that John David "failed to cause the Jane David Trust to make the regular monthly distributions of income that are expressly required under the Jane David Trust Agreement, placing Plaintiff in an untenable financial situation." Compl. ¶ 31.  There are two flaws in that allegation.  First, Plaintiff was not entitled to "regular monthly distributions of income" under the Trust Agreement.  The Agreement provided that "[t]he entire net income received by the Trustees . . . shall be paid to, or for the benefit of Jacob Chachkes . . . in monthly

or other convenient installments." Trust Agreement, Article II(A). That Plaintiff did not receive payments on a monthly basis, accepting the allegation as true, thus does not establish that he was denied any right he was entitled to under the Agreement. Second, Plaintiff has not alleged any promise or covenant under the Agreement that John David violated. *See Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) ("A breach of contract claim will be dismissed . . . as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.") (quoting *Highlands Ins. Co. v. PRG Brokerage, Inc.*, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004)); *see also Sud v. Sud*, 621 N.Y.S.2d 37 (1st Dept. 1995). The Agreement states, in passive terms, that the net income would be paid to Plaintiff. In contrast to the provisions of the Agreement addressing principal payments, which contemplate that John David will take the necessary action, the Agreement's provisions with respect to income do not, on their face, impose any affirmative obligation on John David. Plaintiff himself was a trustee until the 2019 Agreement and, by the terms of the Agreement, was entitled to take action on behalf of the Trust. If, in fact, Plaintiff did not receive regular distributions of income, the Complaint does not make clear whether that was because of some contractual violation on behalf of John David or simply Plaintiff's failure to exercise self-help.

The Complaint does allege that since execution of the 2019 Agreement—notably, after Plaintiff resigned as Trustee—Plaintiff has only been receiving monthly distributions of $9,500, whereas he is entitled under the 2019 Agreement to monthly distributions of the greater of $9,500 and the actual income of the trust. The Complaint further alleges that on Plaintiff's information and belief, the actual income exceeds $9,500 per month. *See* Compl. ¶¶ 40-41.

However, Plaintiff attempts to state a claim for breach of the Trust Agreement.  He does not purport to allege a breach of the 2019 Agreement—which he argues should be rescinded and not enforced.  Thus, as currently pled, the Complaint fails to state a claim for breach of contract on a theory that any Defendant violated the Trust Agreement.

Plaintiff has also not adequately pled that John David breached the contract by denying payments of principal to Chachkes.

The Trust Agreement gives Trustees other than Chachkes (i.e., John David) the authority, in their "absolute and uncontrolled discretion" to distribute portions of the principal of the Trust for the benefit of Chachkes provided that they determine such portions of principal determine the distributions to be "necessary" for Chachkes' "health, education, maintenance and support," taking into account Chachkes' "station in life," "the amount of income available to him from the Trust," and income available to him "from sources other than this Trust."  Trust Agreement, Article II(B).  The Agreement goes on to express "the Grantor's intention that the health, maintenance and support" of Chachkes "be of primary concern;" it expresses that the Trustee shall exercise his discretion "in a reasonable manner consistent with maintaining the accustomed manner of living of the income beneficiary," with the interests of other beneficiaries being secondary; and it provides that the Trustee, as a result, will not be liable to any other beneficiary for the use of principal for the income beneficiary.  *Id.*  It is not clear that this language confers any enforceable rights on Chachkes.  Language such as "absolute and uncontrolled discretion" ordinarily, and absent other contract language, is impervious to judicial second-guessing. *See, e.g., Moran v. Erk*, 11 N.Y.3d 452, 457 (2008) ("[C]onsiderations of clarity, predictability, and professional responsibility weigh against reading an implied limitation into [a discretionary contractual right]."); *Paxi, LLC v. Shiseido Ams. Corp.*, 636 F. Supp. 2d 275, 286 (S.D.N.Y.

2009) (a contractual power committed to one party's "sole discretion" admitted of no "good faith limitations on [that party's] absolute right" to exercise that power).  Moreover, the language of the second sentence of Article II(B) of the Trust Agreement, which begins by expressing the "Grantor's intention," does not appear to limit that discretion.  Rather, it appears to relieve John David of liability to the other beneficiaries of the Trust for breach of fiduciary duty for invasion of the Trust corpus to distribute principal—even if that conduct hurts the interests of the other beneficiaries—so long as he exercises his discretion in a reasonable manner.

The Court need not reach a final conclusion on whether the second sentence of Article II(B) confers any rights on Chachkes or about whether John David is bound by a duty of good faith.  Even if the answer to those question is yes, Plaintiff has not alleged a breach.  Plaintiff alleges that prior to execution of the 2019 Agreement, John David objected to Chachkes' withdrawal of $10,000 of the Trust's principal to pay his taxes and denied Plaintiff's request to withdraw an unspecified sum to buy a vacation home for himself and his wife.  *See* Compl. ¶¶ 31, 35.  He alleges that John David stated that he would only authorize distributions from the principal for Plaintiff's support and maintenance if Plaintiff agreed to permit John David and Jason David to invade the Jane David Trust's principal.  *Id.* ¶ 35.

The Complaint does not allege, however, other than in the most conclusory terms, that John David denied Chachkes access to principal "necessary" for Chachkes' "health, maintenance and support" given Chachkes' other sources of income (and the income available from the Trust) or that John David acted in any other way that was unreasonable or reflected bad faith.  *See Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 469 (S.D.N.Y. 2007) ("conclusory allegations of a party's failure to act in good faith alone are insufficient; specific factual allegations of a party's bad faith acts are required") (citing *Prospect St. Ventures I, LLC v.*

*Eclipsys Sols. Corp.*, 804 N.Y.S.2d 301, 302 (1st Dept. 2005)).  Not even Plaintiff alleges that he was contractually entitled to the funds for a vacation home for himself and his new wife, or that such was within the contemplation of Jane David when she created the Trust and provided that principal could be invaded for Chachkes' maintenance and support.  Similarly, there are no specific factual allegations to establish that a distribution from the trust's principal of $10,000 for tax payments was "necessary . . . [for Chachkes'] health, education, maintenance and support, in accordance with his station in life, due regard being given by the Trustees to the amount of income available to him from the Trust, and from sources other than this Trust."  That John David made a further judgment that he *would* be willing to make such distributions of principal to Chachkes on the condition that Chachkes allow early distributions from the Trust to its other beneficiaries in the form of payments from principal does not establish bad faith, unreasonable exercise of discretion, or a breach of contract.

The same defect appears in Plaintiff's allegations that subsequent to the 2019 Agreement, John and Jason David denied requests for payments out of the Trust principal to pay for new hearing aids and a new air conditioning system.  Indeed, the Complaint admits that as to these payments, "John and Jason David . . . took the position that Plaintiff should pay these expenses out of his monthly distributions."  Compl. ¶ 45.  The very provision of the Trust Agreement that Plaintiff alleges was breached by these denials expressly confers to the Trustees the discretion to take such a position.  *See* Trust Agreement, Article II(B) (determinations as to payments of principal to Chachkes shall be made with "due regard . . . to the amount of income available to him from the Trust, and from sources other than this Trust . . .").  The Complaint does not allege facts to support a claim that these denials were made in bad faith or in an unreasonable manner, even if such standards applied to the exercise of Defendants' discretion.

24

Finally, Plaintiff's argument that Defendants violated the Trust Agreement by failing to transfer all of the Jane David Trust's assets to a designated successor Trustee upon receipt of a duly executed written notice also fails to establish a claim for breach of contract.  Among other things, Plaintiff does not allege any damages flowing from the failure of Defendants to so resign, which Plaintiff's counsel admitted at oral argument.  *See* Dkt. No. 44 (Transcript of Hearing held December 10, 2020) at 12.  Accordingly, the breach of contract claim must be dismissed in its entirety.

## 2.    Rescission

Defendants move to dismiss the third cause of action, for rescission of the 2019 Trust Agreement.  "Under New York law, rescission is an extraordinary remedy" and is "appropriate only where the breach is found to be material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 2016 WL 5719749, at *2 (S.D.N.Y. Sept. 29, 2016) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 143 (2d Cir. 2000)). A claim for rescission must allege "fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof." *Id.* (quoting *Mina Inv. Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355, 362 (S.D.N.Y. 1998); *see Babylon Assocs. v. Cnty. of Suffolk*, 475 N.Y.S.2d 869, 874 (2d Dept. 1984)).  The grounds for rescission of a contract also include "duress and undue influence where the complaining party is compelled to agree to the contract by means of a wrongful threat which precludes the exercise of free will," *Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, 2006 WL 1997628, at *12 (S.D.N.Y. July 18, 2006), as well as unconscionability, *see Ramiro Aviles v. S&P Global, Inc.*, 380 F. Supp. 3d 221, 303 (S.D.N.Y. 2019).  Plaintiff's principal argument is that it has stated a claim for rescission on

grounds that Chachkes agreed to the 2019 Agreement only under duress. *See* Compl. ¶ 71. The Complaint also states the 2019 Agreement is "unconscionable, overreaches, is contrary to public policy and fails for lack of consideration." *See id.* ¶ 72.

Count three must be dismissed for failure to state a claim for rescission. The allegations in the Complaint do not support Chachkes' principal argument, that Chachkes only agreed to the 2019 Agreement under duress. "The doctrine of economic duress is grounded in the principle that courts 'will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury.'" *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (quoting *VKK Corp. v. NFL*, 244 F.3d 114, 122 (2d Cir. 2001)). "To void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of (1) a wrongful threat that (2) precluded the exercise of its free will." *Id.* (citing *Stewart M. Muller Constr. Co. v. N.Y. Tel. Co.*, 390 N.Y.S.2d 817, 817 (1976); *Sitar v. Sitar*, 878 N.Y.S.2d 377, 380 (2d Dept. 2009); *see also Quinio v. Aala*, 344 F. Supp. 3d 464, 477-78 (E.D.N.Y. 2018) ("In order to prove that an agreement was executed under duress, a defendant must prove that there was: '(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative.'" (quoting *Kamerman v. Steinberg*, 891 F.2d 424, 431 (2d Cir. 1989)). The Complaint does not meet this standard to make out a claim that Chachkes signed the 2019 Agreement under economic duress.

In the context of economic duress, "a threat to withhold performance that one is contractually obligated to provide in order to compel the other party to submit to new demands can constitute a wrongful threat." *Interpharm, Inc.* 655 F.3d at 142; *see Bechard v. Monty's Bay Recreation, Inc.*, 826 N.Y.S.2d 826, 827 (3d Dept. 2006) ("an unlawful threat includes a threat to

breach the agreement by withholding performance unless the other party agrees to some further demand.") (internal quotation marks and citation omitted).  However, "a party cannot be guilty of economic duress for refusing to do that which he or she is not legally required to do." *Interpharm, Inc.*, 655 F.3d at 142 (citing *Friends Lumber v. Cornell Dev. Corp.*, 663 N.Y.S.2d 327, 330 (3d Dept. 1997)).  Therefore, "threats to enforce a party's legal rights under a contract," or "even that party's interpretation of its rights" does not "constitute a wrongful threat sufficient to establish a claim of economic distress."  *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 2010 WL 1257300, at *8 (S.D.N.Y. Mar. 31, 2010), *aff'd sub nom. Interpharm, Inc.*, 655 F.3d at 136. "This last principle suggests that an action cannot amount to a wrongful threat if the party taking it interprets the contract in good faith to allow it."  *Id.*; *see also Interpharm, Inc.*, 655 F.3d at 143 ("it is axiomatic that [a party] cannot be guilty of economic duress for failing to grant further forbearance when [it] ha[s] no legal duty to do so.") (quoting *MLI Indus. v. N.Y.S. Urb. Dev. Corp.*, 613 N.Y.S.2d 977, 980 (3d Dept. 1994)).

The Complaint has not alleged that Defendants made an unlawful threat for the same reason that it has not alleged a breach of contract: there are no well-pled allegations that John David exercised his discretion to deny payments of principal in violation of the contract or in bad faith.  In the absence of such an allegation, Plaintiff does not adequately plead that John David threatened any unlawful exercise of his discretion to induce the 2019 Agreement.

The Complaint also falls short of establishing that any purported threat was so coercive as to preclude the exercise of Plaintiff's free will.  "A plaintiff's free will is precluded when (1) it would have suffered 'irreparable harm' had the wrongful threat been carried out, and (2) it was bereft of alternatives to signing the contract."  *Interpharm, Inc.*, 2010 WL 1257300, at *10. Plaintiff's conclusory assertion that John David's behavior "deprived [him] of his primary source

27

of income and placed him in a difficult financial position," Compl. ¶ 34, is not sufficient. Without minimizing Plaintiff's plight, the exercise of contractual rights or perceived contractual rights by one party to the detriment of another not infrequently causes economic harm to the second party. *See Orix Credit Alliance, Inc. v. Hanover*, 582 N.Y.S.2d 153, 154 (1st Dept.1992) ("A mere threat by one party to a contract to breach it by not delivering required items, indeed, financial or business pressure of all kinds, even if exerted in the context of unequal bargaining power, does not constitute economic duress."); *Warnaco Inc. v. Farkas*, 872 F.2d 539, 546 (2d Cir. 1989) (threat of economic loss was not sufficient to preclude exercise of free will); *cf. VKK Corp.*, 244 F.3d at 123 (economic duress doctrine is "reserved for extreme and extraordinary cases"). The ordinary answer if a party believes its rights are being violated is to sue. Nothing prohibited Chachkes from doing so here, or compelled him to sign the 2019 Agreement. *See Reid v. IBM Corp.*, 1997 WL 357969, at *7 (S.D.N.Y. June 26, 1997) ("turning down [a proposed agreement] and pursuing legal claims . . . [is] a reasonable alternative [to making the agreement under duress], even if a hefty financial incentive is offered for signing the [agreement]") (citations omitted). That Chachkes chose to sign the 2019 Agreement, in lieu of suing, then does not make his signature coerced or give him the right to rescind the 2019 Agreement now that he apparently has second thoughts (or has received the benefit from that agreement).

Finally, the Complaint also does not contain well-pled allegations that the 2019 Agreement lacked adequate consideration or was unconscionable, and its claim for rescission cannot be sustained on those grounds.

"[F]ailure of consideration exists wherever one who has promised to give some performance fails without his or her fault to receive in some material respect the agreed quid pro

quo for that performance.  Failure of consideration gives the disappointed party the right to
rescind the contract." *Courchevel 1850 LLC v. Espinosa*, 2020 WL 635498, at *4 (S.D.N.Y.
Feb. 11, 2020) (quoting *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1199
(S.D.N.Y. 1996)).  Under New York law, "[c]onsideration is found where there is either a benefit
to the [buyer] or a detriment to the [seller]." *Matter of Ball (SFX Broad. Inc.)*, 665 N.Y.S.2d 444,
446 (3d Dept. 1996) (citing *Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 464 (1982)).

Here, the 2019 Agreement both conferred a benefit on Chackles and a detriment on the
Defendants.  It is not accurate that Chachkes did not receive anything to which he was not
already entitled under the Trust Agreement.  Under the 2019 Agreement, he received a one-time
payment of "the sum of $317,842.40" paid by the trust, 2019 Agreement, Article III(B)(3)(e), to
"permit Plaintiff to purchase a vacation home for himself and Ms. Fischer," Compl. ¶ 40, as well
as a "monthly payment of the greater of actual income [of the trust] or $9,500.00, first from
income then from principal of the JANE V. David TRUST," 2019 Agreement.  2019 Agreement,
Article III(B)(4)(c).  The Trust Agreement did not confer a right to either.  As noted above, the
Trust Agreement left it to the uncontrolled discretion of John David whether to invade the Trust
corpus and pay principal to Chachkes.  He was not entitled to money for a vacation home.  Nor
was he entitled to "monthly" payments of income, much less payments in excess of income
should the monthly income fall below $9,500.

Plaintiff has also failed to allege unconscionability.  "Under New York law, a contract is
unconscionable when it 'is so grossly unreasonable or unconscionable in the light of the mores
and business practices of the time and place as to be unenforceable [sic] according to its literal
terms.'"  *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)
(quoting *Gillman v. Chase Manhattan Bank, N.A.*, 537 N.Y.S.2d 787, 791 (1988)).  "Generally,

there must be a showing that such a contract is both procedurally and substantively unconscionable." *Id.* "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se." *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (1983); *see also Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir.1999) ("A contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.") (quotation marks omitted)). The Complaint does not contain well-pled allegations of either procedural or substantive unconscionability.

Plaintiff does not allege any of the facts that would support procedural unconscionability "such as 'whether deceptive or high-pressured tactics were used, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power [including age].'" *Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 355 (S.D.N.Y. 2020) (quoting *Am. Family Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 26 (2d Cir. 2019)). Nor does he properly allege substantive unconscionability. Accordingly, the claim for rescission is dismissed.

### 1. Equitable Accounting

"Under New York law, there are four elements to a claim for equitable accounting: (1) a fiduciary relationship; (2) entrustment of money or property; (3) no other remedy; and (4) a demand and refusal of an accounting." *Fuller Landau Advisory Servs. Inc. v. Gerber Fin. Inc.*, 333 F. Supp. 3d 307, 315 (S.D.N.Y. Aug. 8, 2018).

These requirements derive from fundamental principles of equity. A court will not act in equity where there is an adequate remedy at law. *Leighton v. Poltorak*, 2018 WL 2338789, at *9 (S.D.N.Y. May 23, 2018). In addition, ordinarily, a court will not intervene in equity to do for a

party what that party, without excuse, has not attempted to do for himself. *Romain v. Seabrook*, 2017 WL 6453326, at \*6 n.8 (S.D.N.Y. Dec. 15, 2017), *aff'd sub nom. Jiminian v. Seabrook*, 760 F. App'x 38 (2d Cir. 2019) ("Plaintiff's failure to make a demand is . . . fatal . . . [to its claim for] equitable accounting."); *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 168 (1st Dept. 2003) ("a court of equity will not intervene to vindicate a partner's right to an accounting in the absence of a showing that a demand for one was made and rejected by the partner in possession of the books, records, profits or other assets of the partnership").

Plaintiff's claim fails for, among other reasons, the failure to allege a demand for accounting that was rejected by Defendants. This is not a case where Plaintiff alleges that demand would be futile. *See Nuss v. Sabad*, 976 F. Supp. 2d 231, 249 (N.D.N.Y. 2013) ("the [demand] requirement may be excused where the record makes clear that a demand would have been futile.") (collecting cases). Plaintiff has alleged an "acrimonious" relationship with Joan David's son and grandson. That is not surprising—it would exist in any case where a party sues for an accounting—and it does not alone establish that a demand would be futile. There are no allegations that the Defendants have refused to communicate with Plaintiff or denied requests for information about the Trust. Absent an allegation that a demand for accounting was made and denied, and absent a plausible factual allegation that a demand for accounting would be futile, the claim for equitable accounting is dismissed.

## 2.      Preliminary and Permanent Injunction

Defendants also move to dismiss the claims for preliminary injunction and permanent injunction. Although Plaintiff pleads preliminary injunction and permanent injunction as separate causes of action, he makes clear in his brief that he does not intend to stand on these as separate and freestanding causes of action but rather as forms of relief to which he may be entitled should he prevail on his other claims. He has not moved for a preliminary injunction and

the attack on the request for permanent injunctive relief is premature here at the motion to dismiss stage. *See In re Lloyd's Am. Tr. Fund Litig.*, 954 F. Supp. 656, 682 (S.D.N.Y. 1997); *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 353 (E.D.N.Y. 2007) ("a motion for failure to state a claim properly addresses the cause of action alleged, not the remedy sought"); *id.* ("Only when th[e] remedy has been determined may defendants contest its application on grounds of vagueness or some other violation of Rule 65(d) of the Federal Rules of Civil Procedure.").

## CONCLUSION

For the forgoing reasons, the motion for partial summary judgment is GRANTED.  The motion to dismiss counts two, three, six, and eight of the Complaint is also GRANTED and those counts are DISMISSED without prejudice to Plaintiff filing an amended complaint within two weeks of the date of this Order.  The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 26 and 30.

SO ORDERED.

Dated: January 12, 2021
      New York, New York                              _____
                                                            LEWIS J. LIMAN
                                                       United States District Judge